F I L E D
Clerk
District Court

MAY 1 0 2002

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| DOES I, et al., On Behalf of Themselves and All Others Similarly Situated, | ) ) ) | Case No. CV-01-0031 |
| Plaintiffs, | ) ) ) ) | ORDER CONSOLIDATING CASE NOS. CV-01-0031, CV-01-0036 AND CV-01-003 FOR PURPOSES OF PARTIAL SETTLEMENT; GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; DENYING DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF ARTHUR MILLER; GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS; AND GRANTING PLAINTIFFS' MOTION FOR AN ORDER REQUIRING CONTRACTOR DEFENDANTS TO POST NOTICES OF PROPOSED SETTLEMENTS |
| v. | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| THE GAP, INC., et al., | ) ) | |
| Defendants. | ) ) | |

THESE MATTERS came before the court on February 14, 2002 for hearing on plaintiffs'

AO 72
(Rev 8/82)

1387

Motion for Class Certification, Motion for Preliminary Approval of Settlements and Motion for an Order Requiring Contractor Defendants to Post Notices of Proposed Settlements, and defendants' Motion to Strike the Declaration of Arthur Miller.

Attorneys Pamela Parker, Pamela Brown, Joyce C.H. Tang, G. Patrick Civille, and Michael Rubin appeared on behalf of plaintiffs. Attorneys Eric S. Smith, Glenn Jewell, Colin Thompson, Rexford Kosack, William M. Fitzgerald, Robert Goldberg, Thomas Clifford, Steven Pixley, Mark Williams, Brien Sers Nicholas, Richard Pierce, Robert O'Connor, Antonio R. Sarabia II, John W. Keker, Reginald D. Steer, Harold J. McElhinny, David A. Schwarz, Michael Canter, Joseph Horey, Dave McDowell, John D. Osborn, Perry B. Inos, Brian McMahon, Jay Sorensen, Joel W. Sternman, Robert V. Kuenzel (via telephone), Guy Halgren (via telephone), Rudy Englund (via telephone), Kenneth R. Heitz (via telephone), Stephen S. Hasegawa (via telephone), Rachelle Silverberg (via telephone), Ellen Nadler (via telephone), Patrick Swan (via telephone), Christa Anderson (via telephone) and Sam Pryor (via telephone) appeared on behalf of defendants.

As an initial matter, the court *sua sponte*, pursuant to Rule 42(a) of the Fed. R. Civ. P. hereby orders that case numbers CV 01-0036 (Does I, et al. v. Brylane, L.P., et al.) and CV01-0037 (Does I, et al. v. The Dress Barn, Inc.) are consolidated into case CV-01-0031 (Does I, et al. v. The Gap, Inc., et al.) for purposes of partial settlement. All pleadings involving CV-01-0036 and CV-01-0037 that relate to the issue of settlement shall now utilize case number CV-01-0031 in their caption.

Upon consideration of the written and oral arguments of counsel, plaintiffs' Motion for

AO 72
(Rev 8/82)

1    Class Certification is GRANTED, defendants' Motion to Strike the Declaration of Arthur Miller

2    is DENIED, plaintiffs' Motion for Preliminary Approval of Settlements is GRANTED, and

3    plaintiffs' Motion for an Order Requiring Contractor Defendants to Post Notices of Proposed

4    Settlements is GRANTED.

## DISCUSSION

### I.    Motion for Class Certification

Plaintiffs move the court to grant class certification pursuant to Fed. R. Civ. P. 23(a) and

23(b)(1), (b)(2), or (b)(3) for the following proposed class:

> All persons other than Saipan resident citizens who, at any time since
> January 13, 1989, have been employed on Saipan as factory garment
> workers for one or more of the Contractor Defendants.

The threshold question before the court is whether the proposed class satisfies the

requirements of Rule 23(a) of the Federal Rules of Civil Procedure.  Under Rule 23(a), "[o]ne or

more members of a class may sue or be sued as representative parties on behalf of all only if (1)

the class is so numerous that joinder of all members is impracticable, (2) there are questions of

law or fact common to the class, (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class, and (4) the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  In addition to meeting the

conditions imposed by Rule 23(a), the party seeking class certification must also show that the

action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3).[1]  The burden is on the party

---

[1]

Fed. R. Civ. P. 23(b) states:

AO 72
(Rev 8/82)

seeking class certification to demonstrate that she has met the four requirements of Rule 23(a)

and at least one of the requirements of Rule 23(b).  <u>Zinser v. Accufix Research Institute, Inc.</u>,

253 F.3d 1180, 1186 (9th Cir. 2001).  Before certifying a class, the trial court must conduct a

"rigorous analysis" to determine whether the party seeking certification has met the prerequisites

of Rule 23.  <u>Id</u>.  Furthermore, the trial court must pay "undiluted, even heightened, attention" to

class certification requirements in a settlement context.  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d

1011, 1019 (9th Cir. 1998) (citing <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591 (1997)).

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>>
>> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole; or
>>
>> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

AO 72
(Rev 8/82)

While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23. Zinser, 253 F.3d at 1186.

**A.      Rule 23(a)**

**1.      Rule 23(a)(1) - Numerosity**

The prerequisite of numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). An estimated class of 30,000 members consisting of all non-resident garment workers who, at any time since January 1989, were employed by any of the Contractor Defendants, satisfies this requirement.

**2.      Rule 23(a)(2) - Commonality**

Commonality is satisfied when it is shown that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This rule has been construed permissively. Hanlon, 150 F.3d at 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id.

The plaintiffs have asserted that this is a class action suit challenging the garment production system on Saipan, Commonwealth of the Northern Mariana Islands ("CNMI"), based upon allegations of peonage and involuntary servitude.[2] They have alleged a conspiracy by all

---

[2]
  The plaintiffs' allegations of involuntary servitude were dismissed with prejudice on this date. *See* Order Granting in Part and Denying in Part Customer Defendants' Motion to Dismiss the Plaintiffs' Second Amended Complaint, filed May 10, 2002, p. 33-37.

5

defendants to perpetuate this garment production system and to exploit the plaintiff class for

defendants' own profit.  Plaintiffs further argued that there is commonality of law or fact in this

case because the conduct of the defendants and their agents will be the principal focus of both

sides' evidence based on the plaintiffs' alleged claim of conspiracy.  The court agrees.

The defendants argued strenuously that commonality is not present because this is a case

involving different plaintiffs, with different factual backgrounds, working for different

employers, and allegedly suffering different injuries.  Defendants further argued that the

plaintiffs' experiences regarding their allegations of voluntary hours, recruitment fees, threats,

housing and living conditions, and restrictions on freedom of movement vary greatly from

plaintiff to plaintiff.  While the court acknowledges and agrees that there are disparate alleged

factual circumstances and injuries among the plaintiffs, these differences do not defeat the

court's certification of the plaintiff class at this time.  The plaintiff Does' alleged injuries,

although different, all stem from the same alleged conspiracy amongst the defendants to

dominate and control the garment workforce of the Commonwealth.  The Ninth Circuit has held

that in a civil-rights suit, "...commonality is satisfied where the lawsuit challenges a system-wide

practice or policy that affects all of the putative class members.  In such circumstance, individual

factual differences among the individual litigants or groups of litigants will not preclude a

finding of commonality." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001).  Thus, the

proposed class shares sufficient factual and legal commonality to satisfy the requirements of

Rule 23(a)(2).

### 3.     Rule 23(a)(3) - Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "Where the challenged conduct is a policy or practice that affects all class members, the underlying issue presented with respect to typicality is similar to that presented with respect to commonality, although the emphasis may be different." Armstrong, 275 F.3d at 869. The Ninth Circuit "do[es] not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." Id. See Hanon, 976 F.2d at 508 ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

Defendants argued that there is no typicality because each plaintiff has highly individualized factual circumstances with different injuries allegedly sustained and each plaintiff is subject to a unique defense. As discussed *supra*, the court acknowledges and agrees that there are disparate alleged factual circumstances and injuries among the plaintiffs, but these differences still do not defeat the court's certification of the plaintiff class at this time. The class representatives are part of the same alleged work force allegedly created and sustained by defendants' conspiracy for defendants' mutual benefit and profit. The class representatives'

7

alleged injuries are similar to the class members and flow from the same alleged common

scheme, conspiracy, and course of conduct of the defendants.  The plaintiffs argued, and the

court agrees, that although the injuries allegedly sustained by the class representatives are not

identical to the class members, they are similar in character because class representatives and

class members allegedly suffered economic and other damages, either directly and indirectly, as a

result of the defendants' alleged pattern of racketeering activity, conspiracy, and violation of

statutory, constitutional, and human rights.  Thus, the claims of the representative parties are

typical of the claims of the class.

### 4.    Rule 23(a)(4) - Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequate representation "depends on the

qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests

between representatives and absentees, and the unlikelihood that the suit is collusive."  Brown v.

Ticor Title Insurance Co., 982 F.2d 386, 390 (9th Cir. 1992).  "[A] class representative must be

part of the class and possess the same interest and suffer the same injury as the class members."

Amchem Products, Inc., 521 U.S. at 625-26 (1997).  "Resolution of two questions determines

legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with

other class members and (2) will the named plaintiffs and their counsel prosecute the action

vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020.

The defendants argued that there is inadequate representation because there are intra-class

conflicts of interests between current and former garment workers regarding the form of relief

8

and plaintiffs' counsel has a conflict of interest in representing the putative class because plaintiffs' counsel represents the Union of Needletrades Industrial and Textile Employees ("UNITE") in a California state action.  Defendants contend that one of the goals of UNITE is to rid Saipan of the non-unionized garment factories.  This is directly at odds with the interests of the Saipan garment factory workers.  The defendants also argued that the Doe representatives do not understand the lawsuit, they do not have a role in the decision-making process, and they have insufficient knowledge of their duties and obligations in the lawsuit.

Plaintiffs contend that adequacy of representation is satisfied under the rule because there are so many factual and legal issues common to the class that no conflict exists amongst the Doe representatives and the class members.  Plaintiffs argued that Rule 23(a)(4) requires "adequate," not "perfect," representation.  The named class representatives do not necessarily have to be completely knowledgeable or have a firm understanding of all the factual or legal issues on which the case rests.  Relying on the depositions of the Doe representatives, plaintiffs argued that the Doe representatives have a sufficient understanding that they are representing themselves and other workers who have allegedly suffered injuries similar to their own, that this action is being brought against most of the Saipan garment factories and the factories' retail customers, and that the purpose of this lawsuit is to redress the alleged statutory, constitutional, and human rights violations against all foreign garment workers.  Finally, plaintiffs argued that their counsel are highly experienced in prosecuting complex litigations, including class actions, and their counsel's interests do not conflict with those of the putative class.

The court finds the plaintiffs' argument persuasive.  The class representatives' complete

understanding of the legal basis for the class claims is not required by Rule 23(a)(4).  *See*

Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 366 (1966) (stating that class representative's

complete understanding of the legal basis for the class action is not required by Rule 23).  It is

enough that the representative Does exhibit an understanding of the purpose of this action and

that they share common interests with the absent class members.  In this case, despite their lack

of formal education and knowledge of the English language and American legal system, the

representative Does exhibit an understanding that this action is for the protection of all foreign

garment workers on Saipan because it seeks to remedy the alleged abuses of the foreign garment

worker labor force.  The Supreme Court has noted that "[t]he adequacy-of-representation

requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which

serve as guideposts for determining whether maintenance of a class action is economical and

whether the named plaintiff's claim and the class claims are so interrelated that the interests of

the class members will be fairly and adequately protected in their absence."  Amchem, 521 U.S.

at 626, n.20 (internal quotations and citation omitted).  The court has previously noted *supra* that

the representative Does share "typical" claims and "common" legal and factual issues and

interests with the class members.  Therefore, the representative Does are adequate

representatives who will protect the interests of the class.  Next, there is no conflict between

current and former workers in the form of relief because as discussed *supra*, this is an action

seeking to remedy the alleged systematic abuses of the foreign garment workers in Saipan, not an

action for damages for unpaid wages.  Finally, although defendants contend that plaintiffs'

counsel operate under a conflict of interest, the record of this case, to date, does not contain any

10

evidence of any potential or actual conflict between plaintiffs' counsel and the class members.  In sum, there is no evidence that the individual judgment of plaintiffs' counsel has been overridden by the interests of their client, UNITE.

**B.      Rule 23(b)**

**1.      Rule 23(b)(1)**

A class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class... ." Fed. R. Civ. P. 23(b)(1)(A).  The phrase "incompatible standards of conduct" refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform course of conduct." Zinser, 253 F.3d at 1193 (citing 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE, § 1773 at 431 (2d ed. 1986)).  Rule 23(b)(1)(A) "...is applicable when practical necessity forces the opposing party to act in the same manner toward the individual class members and thereby makes inconsistent adjudications in separate actions unworkable or intolerable." In re Teletronics Pacing Systems, Inc., 172 F.R.D. 271, 284 (S.D. Ohio 1997) (citing 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE, § 1773 at 431 (2d ed. 1986)).  Certification under this rule is not appropriate in an action for damages. Zinser, 253 F.3d at 1193.

Defendants argued that Rule 23(b)(1)(A) certification is unavailable because the plaintiffs cannot establish the requisite "risk of inconsistent or varying adjudications" on their claim for

injunctive relief and their action is predominately for monetary damages.

Plaintiffs argued that although they seek monetary damages, they also seek an injunction establishing an independent monitoring program to prevent future violations of law by the defendants. The monitoring program sought is identical for each defendant in that it holds all defendants to the same standards of conduct in order to avoid the types of factory-by-factory, worker-by-worker conflicts that Rule 23(b)(1)(A) seeks to avoid. According to the plaintiffs, absent class action, the defendants would be faced with potentially numerous lawsuits which could easily lead to conflicting injunctions that impose different standards of conduct, monitoring programs, and remedial rules on the various defendants.

The court finds that certification under Rule 23(b)(1)(A) is proper in this case for the reasons stated by the plaintiffs. Furthermore, while plaintiffs do seek monetary damages, it is important to note that one of the fundamental reasons why they chose to litigate this case is to establish an independent monitoring program of the garment production system in the CNMI. This is evidenced by the pending settlement agreements between the plaintiffs and the 19 settling defendants. The settlement agreements call for a monitoring program to which all the parties can agree, and the agreements all include "a most favored nation clause"[3] which provides that any future changes to the monitoring program will apply to all settling parties.

---

[3]

"Most favored nations clause" is an unconditionally worded clause that prohibits plaintiffs from making a later settlement with remaining defendants on terms more favorable than settlement plaintiffs made with an early-settling defendant, without giving early-settling defendant a refund to equalize the earlier and later settlements. Fisher Bros. v. Phelps Dodge Industries, Inc., 614 F. Supp. 377 (E.D. Penn. 1985) aff'd, 791 F.2d 917 (3rd Cir. 1986).

12

## 2.    Rule 23(b)(2)

Under Rule 23(b)(2), certification is proper when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Class certification under Rule 23(b)(2) "...is appropriate only where the primary relief sought is declaratory or injunctive." Zinser, 253 F.3d at 1195.  A class seeking monetary damages may be certified under this rule when such relief is "merely incidental to the primary claim for injunctive relief." Id.

Defendants argued that the Does' request for injunctive relief (i.e. the monitoring program) is "merely incidental" to the primary claim for money damages because the Does' damages claims depend more on the individual circumstances of each class member's case than on liability to the purported class as a whole.  Defendants also argued that the relief sought by the Doe representatives is inappropriate for class treatment because the putative class consists of individuals alleging different injuries over a 13-year period of time, in 28 different factories that have different policies, and all at the alleged direction of 22 different customer defendants. Thus, the injunctive relief sought is not relief common and beneficial to the proposed class.

Plaintiffs argued that their injunction claims and requests for relief are the primary focus of their case because they brought this action to end the defendants' alleged wrongful conduct and the alleged abusive conditions under which class members have been working.  Plaintiffs also argued that they have properly shown the defendants' conduct to be "generally applicable to the class" because the defendants' alleged conspiracy to dominate and control the garment work

13

force on Saipan is and has been generally directed to all class members, even if not all class members suffered the same injuries from the defendants' alleged concerted scheme. Next, because the defendants' alleged wrongful conduct has general application to the entire class, all class members will benefit from the requested relief – an industry-wide Code of Conduct and an independent Monitoring Program. Finally, the plaintiffs argued in the alternative that if the court finds that the plaintiffs' monetary claims are more than "incidental," then the court may still certify the claim for injunctive relief under Rule 23(c)(4)(A)[4] because that claim lends itself to resolution on a class-wide basis.

The court recognizes that certification under Rule 23(b)(2) is a close call because there is no bright line answer on whether the monetary relief sought in this action is "merely incidental" to the primary claim for injunctive relief or whether the injunctive relief is "merely incidental" to the primary claim for monetary damages. However, relying on the pleadings and in exercise of its discretion under Rule 23, the court grants certification at this time under Rule 23(b)(2). *See* discussion *supra* pp. 3-5; Zinser, 253 F.3d at 1186.

### 3.    Rule 23(b)(3)

Pursuant to Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions of law or fact must "predominate over any question affecting

---

[4]

Fed. R. Civ. P. 23(c)(4)(A) states:

When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues...

14

only individual members;" and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Amchem, 521 U.S. at 615; Fed. R. Civ. P. 23(b)(3). Although they are interrelated, the court addresses these issues independently. Zinser, 253 F.3d at 1189.

### a.    Predominance

"Inherent in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Zinser, 253 F.3d at 1189 (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1234 (9th Cir. 1996). The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. Amchem, 521 US. at 623. The Rule 23(b)(3) predominance criterion is far more demanding than Rule 23(a)'s commonality requirement. Id. at 624. Thus, the presence of commonality alone is insufficient to fulfill Rule 23(b)(3). Hanlon, 150 F.3d at 1022.

The defendants argued that common issues do not "predominate" in this case because the plaintiffs have not alleged a single claim that can be proven entirely with generalized proof that is applicable to the class as a whole. The defendants also argued that at least one element of each of the plaintiffs' claims requires individualized proof and inquiry into the plaintiffs' mental states, alleged injuries, and causes of the alleged injuries. Furthermore, all the individualized proof issues and the variances in the plaintiffs' alleged experiences make it impossible to calculate damages on a class-wide basis.

Plaintiffs argued that the overarching issue in this case is the defendants' and their agents' alleged conspiracy to dominate the foreign garment work force of Saipan and deprive them of

15

their basic human rights and protections. As a result, the proof at trial will focus on common issues of the defendants' conduct, not the class members. Plaintiffs contend that evidence of the defendants' conspiracy and common course of conduct will be the basis for proving the elements of the plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO"), Alien Tort Claims Act ("ATCA"), and Anti-Peonage Act claims,[5] RICO enterprises, predicate acts and injuries, and compensatory, punitive and exemplary damages. Plaintiffs argued that because these claims focus on the defendants' conduct, common questions predominate, regardless of individual factual variances. Finally, plaintiffs argued that damages can be proven on an aggregate basis without each class member presenting individual proof, and the court in this case can use expert testimony, representative sampling, polling, and statistical analysis to prove facts and damages.

The basic premise of the defendants is incorrect because the court does not find that the main issues of this case require the separate adjudication of each class members' individual claim or defense. As discussed in the "commonality" section above, this is a lawsuit challenging the garment production system on Saipan based upon allegations of peonage, not a case involving 30,000 individual tort actions. The gravamen of plaintiffs' case is their claim of an alleged conspiracy by all defendants to perpetuate this garment production system. Defendants argued strenuously, to the point of over-intellectualizing their contention, that common questions of law

---

[5]

The plaintiffs' Anti-Peonage Act claims were dismissed with prejudice on this date. *See* Order Granting in Part and Denying in Part Customer Defendants' Motion to Dismiss the Plaintiffs' Second Amended Complaint, filed May 10, 2002, p. 40-42.

16

or fact do not predominate because individualized proof and inquiry into the plaintiffs' mental states, alleged injuries, and causes of the alleged injuries will be needed to prove at least one element of each of the plaintiffs' claims. As discussed *supra*, the court acknowledges and agrees that there are disparate alleged factual circumstances and injuries among the Doe representatives and the plaintiffs, but these differences do not defeat the court's certification of the plaintiff class at this time. The plaintiff Does' alleged injuries, although different, all stem from the same alleged conspiracy amongst the defendants to dominate and control the garment work force of Saipan. The plaintiffs argued, and the court agrees, that they will need to present common evidence to prove the defendants' alleged conspiracy and common course of conduct to prove their RICO, ATCA and Anti-Peonage Act claims, RICO enterprises, predicate acts and injuries, and compensatory, punitive and exemplary damages. Finally, just as the proof required to prove the alleged conspiracy is class-wide, so is the evidence that will be used to show class-wide economic and non-economic damages. The court finds plaintiffs' argument persuasive that individual proof is not required from each class member and that damages can be proven by using expert testimony, representative sampling, polling, and statistical analysis. These methods provide for the fair distribution of monetary damages to the class members, if and when liability is established, and protects all class members' due process rights. In conclusion, the court finds that common questions predominate and certification of the class is proper at this time.

17

b.      **Superiority**

In determining superiority, courts must consider the four factors of Rule 23(b)(3).[6]

Zinser, 253 F.3d at 1190. " A consideration of these factors requires the court to focus on the

efficiency and economy elements of the class action so that cases allowed under subdivision

(b)(3) are those that can be adjudicated most profitably on a representative basis." Id. (citing 7A

CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE &

PROCEDURE, § 1780 at 562 (2d ed. 1986)).

Defendants contend that class action treatment of this case is inappropriate and

unmanageable because there are numerous individual issues that affect each putative class

member and each of these issues would have to be tried on an individual-by-individual basis.

The potential 30,000 class members worked in twenty-eight different factories for numerous

different departments and supervisors, at different times spanning a 13-year period.  Defendants

argued, therefore, that the aggregation of all garment workers in a single action will make matters

of proof extremely difficult and unwieldly.  Defendants also argued that there are reasonable

alternatives to class certification.  For example, the Fair Labor Standards Act ("FLSA") action

---

[6]

The four factors are:

(A) the interest of members of the class in individually controlling the
prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy
already commenced by or against members of the class;
(C) the desirability or undesirability of concentrating the litigation of the
claims in the particular forum; and
(D) the difficulties likely to be encountered in the management of a class
action.

18

(Does I, et al. v. Advance Textile Corp., No. CV99-0002) presently before this court already addresses the plaintiffs' wage-related complaints and workers have administrative remedies through the CNMI Department of Labor and Immigration ("DOLI") available to them.

Plaintiffs argued that a class action is the only practicable means of resolving the class members' claims in a fair, efficient, and manageable fashion because no reasonable alternative methods of adjudicating this action are available. First, the court's resources will be burdened if this action were to proceed as individual actions. Plaintiffs contend that the filing of thousands of individual RICO, Anti-Peonage Act, ATCA, etc. claims will not provide plaintiffs with fair and efficient justice because of the high risk of inconsistent and varying adjudications. Second, plaintiffs argued that current and former garment workers who are not aware of the lawsuit will be deprived of their day in court absent class certification. The putative class members' resources are small compared to the factory and retailer defendants. In addition, the putative class members' lack of formal education and knowledge of the English language, lack of familiarity of the American legal system and the rights guaranteed by it, and their alleged fear of retaliation by the defendants make it improbable that the putative class members would even pursue individual actions. Finally, plaintiffs argued that the alternatives offer no possibility to address and obtain relief for the alleged industry-wide conspiracy and defendants' common course of conduct that give rise to the plaintiffs' RICO, Anti-Peonage Act, ATCA, and other claims. Plaintiffs asserted that they will not be able to seek the injunctive relief of establishing a monitoring program in the FLSA action because it is restricted solely to recovery of unpaid overtime wages, and DOLI actions have a six month statute of limitations and has limited

19

jurisdiction over certain CNMI law claims.

The court agrees with the reasons stated by the plaintiffs why class action is superior to other available methods for adjudicating this action. The alternatives to class action – thousands of individual suits, the pending FLSA action, and DOLI administrative remedies – are not reasonable alternatives for the putative class members. In conclusion, the court finds that a class action is the superior method of adjudicating this action, and that class certification is proper at this time.

### C.    Conclusion

Accordingly and for the foregoing reasons, the court GRANTS plaintiffs' Motion for Class Certification. The court orders that the above captioned case be maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of the following plaintiffs:

> All persons other than Saipan resident citizens who, at any time since January 13, 1989, have been employed on Saipan as factory garment workers for one or more of the Contractor Defendants.

Subject to further order of this court, DOES I through XXV are designated as class representatives. Any plaintiffs' and defendants' counsel seeking to serve as Lead Counsel shall submit their curricula vitae to the court within 14 days of this order. The court will appointment one Lead Class Counsel for plaintiffs and two Co-Lead Counsel for the defendants (i.e. one counsel representing the retailer defendants and one counsel representing the manufacturer defendants). The court will make its determination on this matter without oral argument.

This order is subject to alteration or amendment under Fed. R. Civ. P. 23(c).

20

## II.     Motion to Strike the Declaration of Arthur Miller

Defendants move to strike Arthur Miller's declaration arguing that it was not filed with plaintiffs' opening brief and therefore it raised new issues and facts in plaintiffs' reply.  Plaintiffs argued that there are no new facts or evidence raised in the Miller declaration because Professor Miller only addressed issues presented in plaintiffs' opening and defendants' opposition briefs. Plaintiffs also argued that the purpose of the Miller declaration was to rebut and respond to the expert testimony rendered by George L. Priest submitted in support of defendants' opposition memorandum.  The court finds that the Miller declaration was timely filed and admitting the declaration into the record will not prejudice any of the parties on this matter.  Accordingly, defendants' Motion to Strike the Declaration of Arthur Miller is DENIED.

## III.     Motion for Preliminary Approval of Settlements

Plaintiffs move the court to grant preliminary approval of the proposed settlements in this action which resolve claims against 19 retailer defendants in three related lawsuits.[7]

---

[7]

The 19 Settling Defendants are: Brylane, L.P., Cutter & Buck, Inc., Donna Karan International Inc., The Dress Barn, Inc., The Gymboree Corp., J. Crew Group, Inc., Jones Apparel Group, Inc., Liz Claiborne, Inc., The May Department Stores Company, Nordstrom, Inc., Oshkosh B'Gosh, Inc., Phillips-Van Heusen Corp., Polo Ralph Lauren Corp., Sears Roebuck and Company, Tommy Hilfiger U.S.A., Inc., Warnaco Group, Inc., Calvin Klein, Inc., Brooks Brothers, Inc., and Woolrich, Inc.

The three related lawsuits, which the court consolidated for purposes of settlement (*see* discussion *supra* p. 2), are CV 01-0031 (Does I, et al. v. The Gap, Inc., et al.), CV 01-0036 (Does I, et al. v. Brylane, L.P., et al.), and CV01-0037 (Does I, et al. v. The Dress Barn, Inc.).

Settling Defendants, The Dress Barn, Inc. and J. Crew Group, Inc., both filed a Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Settlements.

21

**A.    Procedural Posture**

This putative class action was first filed on January 13, 1999, in the United States District Court for the Central District of California.  On September 29, 1999, the C. D. of California transferred the case to the United States District Court for the District of Hawaii pursuant to 28 U.S.C. § 1404(a).  On June 23, 2000, the Hawaii District transferred the case to this court pursuant to 28 U.S.C. § 1406(a).  The Hawaii District's order was subject to an appeal to the United States Court of Appeals for the Ninth Circuit, and the case was ultimately received by this court on June 4, 2001.  The plaintiffs, who comprise a putative class of potentially 30,000 foreign garment workers who are or were employed in garment factories located in Saipan, CNMI, have alleged that the defendants have violated RICO, ATCA, and the Anti-Peonage Act.  The plaintiffs challenge the garment production system in the CNMI as being based upon a system of peonage, and contend that plaintiff foreign guest workers were forced to work under unlawful "sweatshop" conditions.  The class proposed by the plaintiffs, which the court certifies above (*see* discussion *supra* Part I.A-B, pp. 3-20), is:

> All persons other than Saipan resident citizens who, at any time
> since January 13, 1989, have been employed on Saipan as a factory
> garment worker for one of more of the Contractor Defendants.

In the spring of 1999, initial settlement discussions began with two groups of defendants - Group One: Cutter & Buck, Gymboree, Nordstrom and J. Crew and Group Two: Brylane, Donna Karan International, Phillips-Van Heusen, and Polo Rlaph Lauren.  On August 6, 1999, the first

Tommy Hilfiger U.S.A., Inc., Nordstrom, Inc., The Gymboree Corp., and Cutter & Buck, Inc. all joined in J. Crew Group, Inc.'s Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Settlements.

AO 72
(Rev 8/82)

group of defendants reached a tentative settlement with the plaintiffs.  Soon thereafter, the

plaintiffs reached an agreement with the second group of defendants.  In mid-October 1999, the

plaintiffs reached an agreement with Dress Barn, and between November 1999 and March 2000,

the plaintiffs reached agreements with defendants Jones Apparel, May Co., Oshkosh, Sears and

Roebuck, Tommy Hilfiger, Warnaco, Liz Claiborne, and Calvin Klein.  Since then, plaintiffs

have reached similar settlements with defendants Brooks Brothers and Woolrich.  All of the

settlement agreements contain substantially the same terms, except for the amounts that the

settling defendants agreed to contribute to the settlement.

  In agreeing to settle the action, the settling defendants have asserted that they never have,

nor do they now, engage in, support or condone unfair labor practices.  The settling defendants

deny liability for any of the claims set forth in the Complaint against them.  They assert that they

have agreed to settle the actions in order to avoid the substantial diversion of financial and

human resources inherent in the litigation process, irrespective of the outcome which they

believe, in this case, would be favorable to them.

  The proposed settlements have four main elements: (1) a requirement that the settling

retailer defendants include a specified code of conduct - "CNMI Monitoring Standards" - in all

future contracts with CNMI garment suppliers, which the suppliers must accept and follow as a

condition of obtaining new business from the settling defendant; (2) establishment of a system of

independent workplace and living quarters monitoring, under the auspices of an independent,

AO 72
(Rev 8/82)

non-profit international Monitoring Body,[8] to ensure that all terms of the CNMI Monitoring

Standards are fully satisfied; (3) establishment of a Settlement Fund to fund the Monitoring

Program and Monitoring Body and to compensate the settlement class members for the harms

alleged in the complaints (10% of the Settlement Fund will be contributed to a *cy pres* fund that

will be administered by the non-profit Tides Foundation, to further the goals of the California

state actions[9]); and (4) payment of plaintiffs' costs and attorneys fees and the administrative costs

of notifying the class and implementing the proposed settlements.

The plaintiffs now come before the court and request an order granting preliminary

approval of the settlements. Plaintiffs also request provisional certification of the following

"Settlement Class":

> All persons other than CNMI resident citizens who, at any time
> between January 13, 1989 and the [date of Federal Court's provisional
> certification] were or have been employed in the CNMI as a garment
> factory worker for one of more CNMI Contractors or CNMI
> Subcontractors . . . that manufactures or have manufactured garments

---

[8]

Pursuant to the proposed Monitoring Program, the independent Monitoring Body will be the Massachusetts-based non-profit organization, Verification in Trade and Export ("Verité").

[9]

The California state actions are two actions resting on similar underpinnings that are pending in the California Superior Court in San Francisco: Union of Needletrades Indus. and Textile Employees, AFL-CIO v. The Gap, Inc. and Union of Needletrades Indus. and Textile Employees, AFL-CIO v. Brylane, L.P.. The state actions allege, *inter alia*, that defendant retailers misled the public and falsely advertised that their Saipan-manufactured garments were "sweatshop free" and manufactured in full compliance with all applicable labor laws. Pursuant to the Proposed Settlements, the claims against the settling defendants in those cases will be dismissed voluntarily, and 10% of the settlement fund created by the parties' Proposed Settlements will be devoted to *cy pres* measures consistent with the goals of the pending California state actions.

for the Company or for [any of the Settling Defendants] or for any U.S.
mainland retailer or apparel company that is or has been a party
[named in this action, one of two similar State actions or an action filed
in the U.S. District Court in Saipan[10]].

The "Settlement Class" shall consist of all members of the Provisional Class who do not opt out

of the settlements.

**B.      The Proposed Settlements are Fair, Adequate, and Reasonable and are
         Preliminarily Approved Until the Court Conducts the Fairness Hearing**

Rule 23(e) of the Fed. R. Civ. P. requires federal district courts to approve all settlements

of class actions.[11]  *See* Evans v. Jeff D., 475 U.S. 717, 726 (1986).  This rule also "requires the

district court to determine whether a proposed settlement is fundamentally fair, adequate, and

reasonable." Hanlon, 150 F.3d at 1026.  The Ninth Circuit provides factors that a district court

must balance in assessing the fairness, adequacy, and reasonableness of a settlement proposal:

the risk, expense, complexity, and likely duration of further litigation; the risk of
maintaining class action status throughout the trial; the amount offered in settlement;
the extent of discovery completed and the stage of the proceedings; the experience
and views of counsel; the presence of a governmental participant; and the reaction
of the class members to the proposed settlement.  Id. (internal citation omitted).

*See also* In re Holocaust Victim Assets Litigation, 105 F. Supp.2d 139, 145-46 (E.D.N.Y. 2000)

(stating that in determining fairness, the "...consideration focuses on the negotiating process by

---

10

The "action filed in the U.S. District Court in Saipan" refers to Does I, et al. v.
Advance Textile Corp., No. CV99-0002.

11

Fed. R. Civ. P. 23(e) states:

A class action shall not be dismissed or compromised without the approval of the
court, and notice of the proposed dismissal or compromise shall be given to all
members of the class in such manner as the court directs.

which the settlement was reached.  The process must be examined in light of the experience of

counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may

have marred the negotiations themselves . . . . So long as the integrity of the arm's length

negotiation process is preserved . . . a strong initial presumption of fairness attaches to the

proposed settlement.") (internal citations and quotations omitted); In re NASDAQ Market-

Makers Antitrust Litigation, 1997 WL 805062, *8 (S.D.N.Y. Dec. 31, 1997) ("Where the

proposed settlement appears to be the product of serious, informed, non-collusive negotiations,

has no obvious deficiencies, does not improperly grant preferential treatment to class

representatives or segments of the class and falls within the range of possible approval,

preliminary approval should be granted.") (citing MANUAL FOR COMPLEX LITIGATION § 30.41

(3rd ed. 1995)).  The proposed settlement must be taken as a whole and examined for overall

fairness.  Hanlon, 150 F.3d at 1026.  "...[T]he decision to approve or reject a settlement is

committed to the sound discretion of the trial judge because he is exposed to the litigants, and

their strategies, positions and proof."  Id. (internal quotation and citation omitted).

The court conducts a two-step process in determining whether to approve a class action

settlement.  First, the court makes a preliminary fairness evaluation of the proposed settlement.

Cope v. Duggins, 2001 WL 333102, *1 (E.D. La. April 4, 2001) (citing MANUAL FOR COMPLEX

LITIGATION § 30.41 (3rd ed. 1995)).  This preliminary hearing, conducted either before the court

or upon written briefs, is held to evaluate the likelihood that the court would approve the

settlement during its second review stage, the full fairness hearing.  Id.  See also In re Holocaust

Victim Assets Litigation, 105 F. Supp.2d at 144-45 (stating that granting of preliminary approval

and class certification allowed for the implementation of the second step in the settlement evaluation process – dissemination of notice. . . . The final step in the class action settlement evaluation process is a final approval hearing, which is also known as a "fairness hearing."); In re NASDAQ Market-Makers Antitrust Litigation, 1997 WL 805062 at *8 (stating that "[o]nce preliminary approval is granted, the second step of the process ensues: notice of a hearing is given to class members . . . at which time class members and the settling parties may be heard with respect to final court approval.") (citing MANUAL FOR COMPLEX LITIGATION § 30.41 (3rd ed. 1995)). During the preliminary evaluation, the court will examine the submitted materials and determine whether the proposed settlement appears fair on its face. Cope, 2001 WL 333102 at *1.

Non-settling defendants argued that the proposed settlements are unfair and inadequate for the following reasons: First, defendants contend that the selection of Verité as the monitor of factory conditions renders the monitoring program unfair to the non-settling defendants because Verité will not act as a neutral and impartial body. An article published on the Verité web site publicly disparaged factory conditions in Saipan and stated that workers are held in a state of bondage. Defendants argued that designating Verité as the monitor in the proposed monitoring program would vest unlimited discretion in Verité to reach unsupported conclusions about a factory's compliance and ultimately put the factory out of business. Second, the defendants argued that the proposed settlements highlight conflicts of interests within the proposed class, between the proposed class and its representatives, and between the proposed class and its counsel. See discussion supra Part I.A.3-4, pp. 7-11. Third, the defendants contend that the cy

27

*pres* fund created by the proposed settlements is unfair and unreasonable because it diverts settlement funds to non-parties which should be going to class members. The *cy pres* fund furthers the purposes of cases not before this court and none of the putative class members are plaintiffs in those actions. Fourth and finally, the defendants assert that the opt-out notice to class members proposed by the plaintiffs is inadequate because it leaves class members without effective notice. Defendants contend that the plaintiffs do not show that class members would understand and appreciate a notice regarding U.S. class action litigation, even if it were translated in their native tongue, that there is no reason to believe that the defendants' records of the "last known address" of former garment worker class members are reliable, and that there is no basis to believe that the postal systems of China, Bangladesh, and the other Asian countries are reliable enough to ensure that notice would actually reach the addressees.

Plaintiffs assert that the proposed settlements are fair and beneficial to the settlement class and meet the standard for preliminary approval. Plaintiffs contend that the proposed settlements were carefully negotiated between informed and experienced counsel on both sides and in some instances between counsel and settling defendants' President, CEO or high-level production personnel, and were designed to address the issues raised by the plaintiffs in their complaint. To wit, the proposed settlements: (1) address the recruitment fee problem; (2) establish standards for regulating the living and working conditions of the garment workers; (3) fund an ongoing Monitoring Body to ensure compliance with those standards; (4) designate 10% of the Settlement Fund to be used for *cy pres* purposes consistent with the goals of the California state actions; and (5) establish a fund to be distributed on a per capita basis to the class members

28

who do not opt-out of the proposed settlements.[12]  According to the plaintiffs, the proposed

settlements eliminate the risk that the class might not otherwise recover because the settlements

take into account the risks involved in this litigation, including the potential difficulties of

obtaining class certification, overcoming defendants' pending Motion to Dismiss,[13] and proving

class members' claims on the merits against both the contractor and retailer defendants.  In

regards to the proposed notices for the class members, plaintiffs maintain that the notices

describe in sufficient detail the terms and provisions of the proposed settlements to allow class

members to timely make an informed choice about whether to accept the proposed settlements.

Certain settling defendants,[14] in support of preliminary settlement approval, argued that

the non-settling defendants should not be permitted to deny the settling defendants the benefit of

their bargain.  They also argued that the proposed settlements are fair and reasonable because

they  establish a monitoring program that enforces and verifies compliance with applicable

CNMI and federal laws, the settlements compensate class members, and do not impose any

---

[12]

    *See also supra* p. 23-24 for an overview of the main elements of the proposed
settlement agreements.

[13]

    The court's Order regarding the defendants' Motion to Dismiss was issued on this
date. *See* Order Granting in Part and Denying in Part Customer Defendants' Motion to
Dismiss the Plaintiffs' Second Amended Complaint, filed May 10, 2002.

[14]

    Settling Defendants, The Dress Barn, Inc. and J. Crew Group, Inc., both filed a
Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Settlements.
Tommy Hilfiger U.S.A., Inc., Nordstrom, Inc., The Gymboree Corp., and Cutter & Buck,
Inc. all joined in J. Crew Group, Inc.'s Memorandum in Support of Plaintiffs' Motion for
Preliminary Approval of Settlements.

AO 72
(Rev 8/82)

requirements on the non-settling defendants, unless they choose to do business with the settling

defendants.

The court finds that the proposed settlements are sufficiently fair, adequate, and

reasonable for the following reasons: First, there is no evidence to indicate that the proposed

settlements were negotiated in haste or in the absence of information.  In fact, the settlement

negotiations began more than three years ago, and the proposed settlements were revised more

than a  dozen times before the settlement agreements were finalized and submitted to the court.

Second, the settlement agreements were entered into in good faith, after careful arm's-length

negotiations between experienced and informed counsel on both sides and in several instances

with plaintiffs' counsel and settling defendants' President, CEO or high-level production

personnel, and negotiations took more than a year.  Third, the court finds that defendants'

allegations against Verité are unsupported by the record because nothing in the record indicates

that Verité as the monitor would jeopardize the factory and retailer defendants' businesses.  In

fact, built into the settlement agreements are checks and controls on the conduct of the monitor

and a provision allowing the parties to select a monitoring body other than Verité. *See* Hasegawa

Decl., Ex. A: Proposed Settlement Agreement of J. Crew Group, Inc., at pp. 38-42, Part III.1-11

and p. 34, Part I.1.d.  Next, the court finds that there is no conflict among the settlement class and

plaintiffs' counsel, and that the settlement class' counsel are experienced plaintiffs' advocates

and class action lawyers.  Finally, there is no evidence in the record of collusion.  The proposed

settlements do not favor the class representatives or any segment of the class.  Thus, the court

finds that the proposed settlement agreements are the result of serious arm's-length negotiation

1   and are sufficiently fair for preliminary approval.

2       **C.**    **The Proposed Settlement Class is Certifiable Under Rule 23(a) and 23(b)(3)**

3       Defendants argued that the proposed settlement class cannot be certified under Rule 23(a)

4
5   and (b) for the same reasons they objected to plaintiffs' Motion for Class Certification.  *See*

6   discussion *supra* Part I.A-B, pp. 3-20.  Plaintiffs argued to the contrary and contend that Rule

7   23(a)'s numerosity, commonality, typicality, and adequacy, and Rule 23(b)(3)'s predominance

8   and superiority requirements have all been met.  Plaintiffs also argued that the court need not

9   engage in a "full-blown" class certification analysis for purposes of preliminary settlement
10
11   approval.

12       The court will not repeat its Rule 23(a) and (b) analysis nor discuss plaintiffs' contention

13   that a "full-blown" class certification analysis is not required for purposes of this motion because

14   the court has previously ruled that class certification is proper at this time.  *See* discussion *supra*

15   Part I.A-B, pp. 3-20.

16       **D.**    **Non-Settling Defendants Lack Standing to Object to the Proposed**
17                      **Settlements**

18       Plaintiffs contend that the non-settling defendants lack standing to challenge their co-

19   defendants' settlements.  The court agrees.  The Ninth Circuit in <u>Waller v. Financial Corp. of</u>
20
21   <u>America</u>, 828 F.2d 579, 582 (9th Cir. 1987), addressed the issue of when, if ever, a defendant has

22   standing to object to a settlement involving other parties to a lawsuit.  The court held that in

23   general, a non-settling defendant lacks standing to object to a partial settlement.  <u>Id</u>.  However,

24   the Ninth Circuit noted that "[t]here is a recognized exception to the general principle barring

25
26                                     31

objections by non-settling defendants to permit a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement." Id. at 583. Basically, a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal right, claim or defense. Id.

Non-settling defendants argued, without avail, that they will be prejudiced if the court grants plaintiffs' motion for preliminary approval of the proposed settlements without a formal hearing on class certification. If notices are sent to the class, they maintain, plaintiffs' counsel will be given a head start in recruiting workers to file individual claims in the event that the court ultimately determines that class certification is not appropriate. This argument fails because it has been mooted by the court's scheduling of the Motion for Class Certification and Motion for Preliminary Approval of Settlements on the same date. Defendants also argued that they are "adversely affected"[15] by the plaintiffs' selection of Verité as the monitor under the settlement agreements because of Verité's documented bias against Saipan garment factories. This bias threatens the garment factories' ability to obtain future business and jeopardizes both the businesses of the manufacturer defendants and Saipan as a source of quality garments for the retailer defendants. The defendants' argument of being "adversely affected" by the proposed settlements is without merit because it does not amount to the requisite legal prejudice required

---

[15]

     Defendants cite to McAllen Medical Center, Inc. v. Cortez, 66 S.W.3d 227 (Tex. 2001), for the proposition that "a non-settling defendant has standing to contest certification of a settlement class if the non-settling defendant can show that the certification adversely affects it." The court has read and considered McAllen but the decision has no precedential value in the Ninth Circuit.

by the Ninth Circuit in <u>Waller</u>. In sum, the non-settling defendants lack standing to object to the proposed settlements between the plaintiffs and the 19 settling defendants.

**E.    Conclusion**

In conclusion, the court finds that the proposed settlements are sufficiently fair, adequate, and reasonable, justifying notice to the settlement class for an opportunity to be heard. Accordingly and for the foregoing reasons, plaintiffs' Motion for Preliminary Approval of Settlements is hereby GRANTED. The court further ORDERS that plaintiffs' proposed published/posted and mailed Notices of the Proposed Settlements are approved.[16] All litigation of the settled claims against the settling defendants is hereby stayed and enjoined pending the Fairness Hearing. The procedures and timing for the filing of objections and requests for exclusion regarding the Proposed Settlements are as follows:

(1)    Notice of the Proposed Settlements shall be by publication to all settlement class members within 20 days of the date of this order. This will be done by first-class mail to all settlement class members whose addresses have been or can be reasonably ascertained through discovery and other means, and by posting in the workplace.[17] For current workers on Saipan,

---

[16]

    *See* Declaration of Thomas R. Grande in Support of Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Approval of Settlements; Exhibits A-Q, filed March 28, 2000, Ex. O (short form of the proposed mailed class Settlement Notice), Ex. P (Notice of Pendency of Class action, Proposed Settlement, and Objection and Opt-Out Rights and Hearing for publication and posting) and Ex. Q (more detailed proposed publication class Settlement Notice).

[17]

    *See* discussion of Plaintiffs' Motion for an Order Requiring Contractor Defendants to Post Notices of Proposed Settlements *infra* Part IV, pp. 35-38.

AO 72
(Rev 8/82)

Notice will be distributed to them personally at the contractor defendants' factories during paycheck distribution time.  Each factory worker is required to sign a receipt acknowledging their receipt of the Notice.

(2)     All settlement class members have the right to submit objections and/or requests for exclusion.  The last day to file objections or request for exclusion is 120 days after the Notices are sent.

(3)     Publication Notice will be provided within 20 days of the date of this order to settlement class members through publication of the English-language Notice and the Notice translated into the Chinese, Filipino, Thai, Korean, Bangladeshi, and Vietnamese languages for no fewer than four (4) days (i.e. published one day a week for four (4) weeks) in daily newspapers of general circulation in Saipan, China, Thailand, Bangladesh, Korea, Vietnam, and the Philippines.

(4)     The posting of the publication Notice, translated in the specified languages, in appropriate and accessible locations at the contractor defendants' places of business shall occur within 10 days of the date of this order and the Notice will remain posted for at least 30 consecutive days.  The court deems the contractor defendants' factories and company-controlled living quarters and eating facilities as appropriate and accessible locations to post the Notices.  Each contractor defendant is required to file an affidavit with this court confirming that the Notices have been posted as required by this order within 10 days of posting.

(5)     The Fairness Hearing will be conducted 28 days after the expiration of the 120 day period for filing requests for exclusion and objections to the settlements.  Counsel for

34

plaintiffs shall schedule the hearing.

## IV.   Motion for an Order Requiring Contractor Defendants to Post Notices of Proposed Settlements

Plaintiffs move the court to issue an order: (1) finding that their proposed Notices are fair and reasonable; (2) requiring the proposed Notice forms to be distributed personally to each worker at paycheck distribution time, and requiring each worker to sign a receipt for same; or, alternatively or in addition, requiring each contractor defendant to post Notice of the proposed settlement in an appropriate and accessible location and in appropriate languages at the contractor defendants' factories; and (3) ordering the parties to promptly meet to resolve any differences regarding the best practical means of distributing the Notice, and report back to the court within 5 days thereafter with a proposal regarding Notice distribution.

Rule 23(c)(2) of the Fed. R. Civ. P. provides that if a court determines that an action should be maintained as a Rule 23(b)(3) class action, "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified though reasonable effort." Fed. R. Civ. P. 23(c)(2).  Rule 23(d)(2) further provides that a court has authority to "make appropriate orders ... requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action ...." Fed. R. Civ. P. 23(d)(2).  "...[N]otice of [a] proposed ... compromise shall be given to all members of the class in such a manner as the court directs." Fed. R. Civ. P. 23(e).

Defendants oppose the posting of Notice on their property arguing that they are not

parties to the proposed settlements and the posting of the Notices on their personal property would create a bias in favor of the plaintiffs because the Notices create an impression of wrongdoing by those factories required to post them.  Defendants further argued that they should not have to bear the plaintiffs' burden of effecting notice on class members, and that any requirement of posting on defendants' property should be by consensual agreement among the parties, and not pursuant to a court order.

Plaintiffs argued that, in this case, the court should order that the distribution of notice be conducted in the same manner it ordered the parties to distribute the *Hoffman-LaRoche* notice in Does I, et al. v. Advance Textile Corp., No. CV99-0002 (the "FLSA Action").  In the FLSA action, this court ordered that notice be distributed in the factories by personal delivery of notice to workers along with their paychecks.  Plaintiffs contend that this distribution method does not involve any costs to defendants, will not disrupt regular business operations, and the content-neutral notice will not prejudice defendants in any way.  Plaintiffs argued that without the cooperation of the contractor defendants, no adequate notice can be given to current garment workers, as defendants maintain exclusive control over their factories and most, if not all, of the current workers do not have personal mailboxes and mainly receive mail through use of their factory employers' mailbox.  Finally, plaintiffs argued that the posting of notice on defendants' property is a legally-proper method of notice to the class.

Relying on the pleadings and in exercise of its discretion under Rule 23, the court GRANTS plaintiffs' Motion for an Order Requiring Contractor Defendants to Post Notices of

AO 72
(Rev 8/82)

Proposed Settlements. The court finds that the proposed Notices[18] are fair and reasonable because they describe the nature of this action, identify the settling defendants, define the settlement class, and inform the settlement class members of their possible entitlement to monetary payments under the proposed settlements, their right to attend the Fairness Hearing, and their rights to object to or opt-out of the proposed settlements. The proposed Notices allow class members to make an informed choice whether to accept the proposed settlements. Finally, posting the Notice of the proposed settlements at the contractor defendants' factories will neither burden nor prejudice the defendants. The court further ORDERS that:[19]

(1)     Notice of the Proposed Settlements shall be by publication to all settlement class members within 20 days of the date of this order. For current workers on Saipan, Notice will be distributed to them personally at the contractor defendants' factories during paycheck distribution time. Plaintiffs' counsel will deliver the Notices to the appropriate factory personnel or department not less than five (5) days before the scheduled paycheck distribution. Each factory worker is required to sign a receipt acknowledging their receipt of the Notice.

(2)     The posting of the publication Notice, translated in the specified languages, in

---

[18]

    *See* Declaration of Thomas R. Grande in Support of Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Approval of Settlements; Exhibits A-Q, filed March 28, 2000, Ex. O (short form of the proposed mailed class Settlement Notice), Ex. P (Notice of Pendency of Class action, Proposed Settlement, and Objection and Opt-Out Rights and Hearing for publication and posting) and Ex. Q (more detailed proposed publication class Settlement Notice).

[19]

    *See also supra* Part III.E, pp. 33-35 for complete discussion of the court ordered procedures regarding the posting and publishing of the Notices of the Proposed Settlement Agreements.

37

appropriate and accessible locations at the contractor defendants' places of business, shall occur within 10 days of the date of this order and the Notice will remain posted for at least 30 consecutive days. The court deems the contractor defendants' factories and company-controlled living quarters and eating facilities as appropriate and accessible locations to post the Notices. Each contractor defendant is required to file an affidavit with this court confirming that the Notices have been posted as required by this order within 10 days of posting.

## CONCLUSION

In conclusion, the court ORDERS that case numbers CV 01-0036 (Does I, et al. v. Brylane, L.P., et al.) and CV01-0037 (Does I, et al. v. The Dress Barn, Inc.) are consolidated into case CV-01-0031 (Does I, et al. v. The Gap, Inc., et al.) for purposes of partial settlement; plaintiffs' Motion for Class Certification is GRANTED; defendants' Motion to Strike the Declaration of Arthur Miller is DENIED, plaintiffs' Motion for Preliminary Approval of Settlements is GRANTED, and plaintiffs' Motion for an Order Requiring Contractor Defendants to Post Notices of Proposed Settlements is GRANTED.

IT IS SO ORDERED.

Dated this 10th day of May, 2002.

Alex R. Munson
Judge

AO 72
(Rev 8/82)