UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DOE I, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>THE GAP, INC., et al.,<br><br>                    Defendants. | Case No. CV-01-0031<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' REQUEST FOR APPROVAL OF RESERVE FUND, PURSUANT TO SEPTEMBER 9, 2004 ORDER<br><br>JUDGE: Alex R. Munson |
| DOE I, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>BRYLANE, L.P., et al.,<br><br>                    Defendants. | |
| DOE I, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>THE DRESS BARN, INC.<br><br>                    Defendant. | |

[Caption continued on following page.]

- 1 -

DOE I, et al., On Behalf of Themselves and All Others Similarly Situated,

    Plaintiffs,

vs.

ADVANCED TEXTILE CORP.,

    Defendant.

## I. INTRODUCTION

In its September 9, 2004 order (the "Order") regarding the status of settlement administration, the Court concluded that it would be appropriate to set aside as a Reserve Fund a portion of the Settlement Funds designated for distribution to the Opt-In Plaintiffs and Class Members, principally based on the parties' and the Court's recognition that there is a "reasonable possibility that some individuals who are entitled to compensation under the Settlement may not receive it." Order at 8. This might occur, the Court recognized, because some otherwise eligible workers may not have been included in the database originally due to incomplete or missing information, or because there may be mailing, delivery or data input problems. *Id.*

Accordingly, in the Order, the Court directed plaintiffs and the Claims Administrator as follows:

> After the amounts owed to each qualified individual have been calculated, the Claims Administrator shall estimate what the "average" payment would be, and then use that figure, together with an estimate of the numbers of individuals who may come forward in the future, to develop an appropriate amount for the Reserve Fund. Plaintiffs' counsel are directed to submit that proposed amount, once determined, to the Court for its approval.

*Id.*

The Claims Administrator has now reached the point of calculating individual payments. The Court's Order would require the Claims Administrator to calculate payments first, deduct the Reserve Fund and then re-calculate the payments to take account of the monies set aside. Because of the delays that have been encountered, however, plaintiffs' counsel propose that a designated reasonable sum be set aside first, allowing the Claims Administrator to calculate the payments only once. This methodology is simpler and

will save time. The amount plaintiffs' counsel propose for the Reserve Fund is $100,000. As explained below, counsel believe this amount is reasonable in light of all the circumstances. Plaintiffs' counsel respectfully request that the Court promptly approve this sum to expedite payments to the Opt-In Plaintiffs and Class Members.

## II.     PROPOSED RESERVE FUND

Several factors support a Reserve Fund of $100,000. First, it reflects the Claims Administrator's current understanding of the size of the class and the recognition that most Class Members are entitled to relatively modest payments. There are 29,770 identified individuals eligible for payment and approximately $5.6 million in funds available for distribution. This amounts to an average of $189 per person. Of course, this is far from an accurate estimate of what each worker would receive. The payments will vary widely depending on: (1) the worker's employer; (2) how long and during what years each person worked; and (3) whether the worker will receive both a RICO and FLSA payment. However, this "average" figure does indicate that, for most workers, the payments likely will be modest. In addition, the number of known eligible persons is very close to the number long estimated by plaintiffs' counsel to be entitled to payment (*i.e.*, 30,000), based on the factories' records and other information. This indicates that there is, at most, only a small risk that a very large number of previously unknown, eligible claimants will come forward at a later date to assert a right to payment under the Settlement.

Second, as the database of eligible workers has been created and the problems encountered during that process have been addressed, it has become apparent to plaintiffs' counsel and the Claims Administrator that there likely will be a substantial number of returned, undeliverable and/or uncashed checks. This is because of the difficulties inherent in attempting to mail or otherwise deliver checks to non-English speaking individuals in far-flung corners of the globe, relying (in many instances) on the best available but still less-than-perfect information on current addresses. Although it is not possible to estimate a percentage of uncashed checks, plaintiffs' counsel believes that the number and total amount of such unclaimed funds, together with a $100,000 Reserve Fund, would be more than sufficient to resolve any late claims by eligible

workers who were not previously identified, and any other problems arising from the distribution of the payments.

Plaintiffs' counsel believe it is appropriate to consider the likelihood of such unclaimed funds in setting the amount for the Reserve Fund. As the Court recognized in its Order, in administering the Settlement Funds, it is necessary to "balance . . . the need for fairness and consideration of the circumstances of the Settlement Class Members and Opt-In Plaintiffs [with] the reality that there is a fixed pool of funds available for distribution, such that any decision concerning payment to a potentially eligible individual necessarily affect the amount of funds available for them." *Id.* at 2. Setting aside too large a sum for the Reserve Fund would penalize known workers who are eligible for payment, by decreasing the pool of funds available for distribution. Making an allowance for unclaimed funds while still providing a reasonable baseline sum of $100,000 achieves an appropriate balance between these conflicting concerns.

Finally, as the Court is already aware, plaintiffs' counsel, working with the Claims Administrator, have made every reasonable effort to ensure the completeness and accuracy of the database from which payments will be calculated. The information in the database has been checked, double-checked and even triple-checked. Counsel and the Claims Administrator have expended thousands of dollars for which they will not be reimbursed from the Settlement for the purpose of ensuring completeness of the database. Plaintiffs' local counsel has overseen efforts to ensure that workers continually update the Claims Administrator as to their whereabouts. By word of mouth, numerous individuals have come forward in recent months to determine whether they have been included in the database, and if not, to establish their eligibility for payment, if necessary. In other words, great effort has been made to be as inclusive as possible on the front end to minimize the risk that previously unknown claimants will come forward after distribution of the Settlement Funds has occurred.

//

//

In light of all these circumstances, plaintiffs' counsel respectfully submit that a $100,000 Reserve Fund is sufficient to protect the rights of any late claimants under the Settlement. Counsel respectfully request that the Court approve this amount promptly, to enable the Claims Administrator to complete calculation and distribution of payments as soon as possible.

DATED: July 24, 2006

Respectfully submitted,

**CIVILLE & TANG**
G. PATRICK CIVILLE
JOYCE C.H. TANG

_____
JOYCE C.H. TANG

PMB 86, P.O. Box 10003
Saipan, MP 96950-8903
Telephone: 670/235-1725

**LERACH COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP**
KEITH F. PARK
PAMELA M. PARKER
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058

**LERACH COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP**
ALBERT H. MEYERHOFF
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210
Telephone: 310/859-3100
310/278-2148 (fax)

**ALTSHULER, BERZON, NUSSBAUM,
 RUBIN & DEMAIN**
MICHAEL RUBIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151

*Attorneys for Plaintiffs*

C:\DOCUME~1\terreed.LC\LOCALS~1\Temp\MetaSave\MIS 00033145.doc