**CIVILLE & TANG**
G. PATRICK CIVILLE
JOYCE C.H. TANG
PMB 86, P.O. Box 10003
Saipan, MP 96950-8903
Telephone: 670/235-1725

**LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP**
KEITH F. PARK
PAMELA M. PARKER
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
    – and –
ALBERT H. MEYERHOFF                    **ALTSHULER BERZON LLP**
9601 Wilshire Blvd., Suite 510          MICHAEL RUBIN
Los Angeles, CA 90210                   177 Post Street, Suite 300
Telephone: 310/859-3100                 San Francisco, CA 94108
310/278-2148 (fax)                      Telephone: 415/421-7151

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DOES I, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>THE GAP, INC., et al.,<br><br>          Defendants. | Case No. CV-01-0031<br><br>__CLASS ACTION__<br><br>REPORT TO COURT REGARDING SETTLEMENT ADMINISTRATION PER COURT'S MAY 23, 2007 ORDER, AND REQUEST FOR REIMBURSEMENT OF CLAIM ADMINISTRATOR'S COSTS<br><br>DATE:    June 12, 2007<br>TIME:    9:00 a.m.<br>JUDGE:  Alex R. Munson |

# TABLE OF CONTENTS

Page

I.      ACCOUNTING ................................................................................................1

II.     SUMMARY OF SETTLEMENT FUND DISTRIBUTION EFFORTS .........................2

        A.      Handling Settlement Class Member Inquiries ................................2

        B.      Efforts to Locate Settlement Class Members in China....................3

III.    PROPOSALS REGARDING THE UNDISTRIBUTED FUNDS AND THE OB .......................4

IV.     REQUEST FOR REIMBURSEMENT OF GILARDI'S EXPENSES.............................5

V.      ANTICIPATED FURTHER PROCEEDINGS ........................................................7

1   Pursuant to the Court's May 23, 2007 Order ("May 23 Order"), plaintiffs submit this report to update
2   the Court on issues relating to the undistributed Net Settlement Funds, and to advise the Court of their
3   position regarding the future of the Oversight Board ("OB").

4   In addition to providing specific information requested by the Court, counsel formally request that
5   the Court allocate a small portion of the undistributed funds to reimburse the Claims Administrator,
6   Gilardi & Co. ("Gilardi") for the expenses it has necessarily and appropriately incurred, beyond the sum
7   allocated under the Settlement Agreement, as a result of its efforts to ensure the most complete distribution
8   of the Settlement funds possible under the unexpectedly difficult and complex circumstances posed by the
9   administration of this Settlement.

10  Plaintiffs' counsel advise the Court that the factory and retailer defendants were notified of this
11  Status Conference and the Court's May 23 Order.  Counsel anticipate that a representative of the factory
12  defendants will be present for the Status Conference.  Those retailers that responded to the notice have
13  advised plaintiffs' counsel that they have no ongoing interest in proceedings relating to the undistributed
14  funds and the future of the OB.

15  **I.    ACCOUNTING**

16  Counsel have attached hereto under Tab 1 an accounting of the funds held by plaintiffs' counsel.
17  Pursuant to Paragraph 2 of the May 23 Order, plaintiffs' counsel represent to the Court that the Net
18  Settlement Funds have been disbursed or withheld only as directed by the Settlement Agreement, the Court
19  (with respect to the incentive payments to the Doe plaintiffs), or the law (with respect to tax withholdings).
20  There is currently a balance of $340,648.35 in the trust account, which is being held to cover a potential tax
21  liability for the interest earned on the Settlement Fund.  That liability has not yet been resolved.

22

23

24

25

26

- 1 -

## II.    SUMMARY OF SETTLEMENT FUND DISTRIBUTION EFFORTS

Gilardi reports that of the 29,771 checks issued originally, 13,725 checks were cashed.  The total cash distribution represented by these checks is $2,282,835.89 out of an initial net fund of $3,977,674.68.[1] Gilardi reissued or has plans to issue checks to those plaintiffs who did not receive their checks originally and for whom Gilardi now has current addresses, representing a total of $65,198.24.  Thus, $2,348,034.13 of the Net Settlement Funds has already been distributed or shortly will be.  That leaves $1,169,640.55 in uncashed checks.  Adding back in taxes and reserves for the uncashed checks and taking account of interest accrued, there is presently a total of about $2.3 million in unused funds that are available for disposition under Paragraph 14 of the Settlement Agreement – not including the $44,000 held by plaintiffs' counsel that remains to be distributed as Court-approved incentive payments to Doe plaintiffs.

### A.    Handling Settlement Class Member Inquiries

The 120-day period during which checks could be cashed under the Settlement Agreement expired in late January 2007.  Subsequent to the expiration date, Gilardi focused its efforts on addressing the approximately *1,000 inquiries* received from Settlement Class Members[2] (or purported class members), who had not received checks but claimed to be entitled to them.  These inquiries were received directly by Gilardi, or forwarded by the OB or factories.  (*See* report of plaintiffs' counsel filed in November 2006.) Excluding many duplicate inquiries, Gilardi was able confirm that 159 individuals appeared on the existing Settlement Class Member database.  Gilardi has obtained current addresses, and will be issuing checks to those persons.

However, about 600 individuals could not be matched to an existing entry in the database.  For these individuals, the process of verifying their eligibility for payment is considerably much more complex.  It

---

[1]    This figure is net of employment and similar taxes withheld, tax penalty reserves and the Court-approved $100,000 Reserve Fund.  A detailed breakdown of the settlement fund distribution, provided by Gilardi, is attached under Tab 2, and a detailed accounting of the Net Settlement Funds held by Gilardi is attached as Tab 3.

[2]    "Settlement Class Members" is used herein to refer both to class members in the RICO action and Opt-In Plaintiffs in the FLSA action.

entails not only obtaining accurate and complete identifying information, but also sufficient information to verify their eligibility under the Settlement Agreement. Gilardi attempted to follow up with these individuals, but the response rate was not encouraging, principally because an address and other sufficient identifying information was not provided. Thus, of the hundreds of people who claimed they should get a check but did not, only seven provided some sort of verification of the factory where they worked. Those persons will be mailed a check. Of those who were concerned about the amount they received based on how long they worked, only three provided any sort of proof of their employment dates to substantiate their claim. Gilardi will determine whether these three individuals are entitled to any additional payment.

For the remainder, however, Gilardi and plaintiffs' counsel have concluded that attempting to verify their eligibility is not feasible. The amount of time and money that would need to be committed to this process is prohibitive. Plaintiffs' counsel therefore recommend that no further efforts be made in this regard. Extraordinary efforts have already been made to ensure that the database was as complete as possible. As constructed (and corrected and supplemented on numerous occasions since its initial creation), the database contains the collective, most recent information from the factories, plaintiffs' counsel and Settlement Class Members themselves. To attempt to do anything more at this stage would not be practical or cost-effective, and in any event, likely would not result in distribution of a substantial portion of the remaining funds.

**B.    Efforts to Locate Settlement Class Members in China**

Once it became clear that a substantial portion of the Net Settlement Funds had been returned and could not be delivered by mail, plaintiffs' counsel, after consulting with the OB, began to investigate the feasibility of undertaking additional efforts to locate Settlement Class Members in China (where, by far, the greatest number reside), and deliver their payments to them directly. Through their U.S. labor union relationships, plaintiffs' counsel made contact with labor representatives in China, who expressed their eagerness to assist with the process. However, it became apparent as discussions progressed that the proposal presented insurmountable obstacles. Among these were: (1) the need for specific, official identification numbers for each one of the missing Settlement Class Members, such as Social Security or

1   passport numbers; and (2) the required assistance of the Chinese consulate. Neither plaintiffs' counsel nor

2   Gilardi has official identification numbers for all Settlement Class Members, and the process of identifying

3   specific individuals for whom such information may exist ***and*** who also are among those who had not yet

4   received checks – out of a pool of almost 30,000 entries on the database – would be disproportionately time-

5   consuming and expensive.  In addition, the need to involve official channels through the consulate

6   threatened considerable additional delay.

7   For these reasons, plaintiffs' counsel determined that on-the-ground efforts in China overseen by

8   plaintiffs' counsel and Gilardi were not practicable or cost-effective when compared to the likelihood that

9   these efforts would result, at most, in only a relatively small additional distribution of Settlement funds.

10   **III.   PROPOSALS REGARDING THE UNDISTRIBUTED FUNDS AND THE OB**

11   As the foregoing discussion demonstrates, Gilardi and plaintiffs' counsel have made more than

12   reasonable efforts to ensure the most complete distribution of the Net Settlement Funds possible under

13   extraordinarily difficult circumstances.  Indeed, those efforts have greatly surpassed the requirements of the

14   Settlement Agreement.  Although many of the payments have not reached the intended recipients, plaintiffs'

15   counsel and Gilardi agree that the small likelihood that a substantial additional distribution would result

16   from future efforts is far outweighed by the expected substantial commitment of time and financial resources

17   which would be necessary to attempt that process.  In sum, the time has come to bring to a close plaintiffs'

18   counsel's and Gilardi's involvement in the administration of the Settlement.

19   To that end, plaintiffs' counsel believes it is appropriate for Gilardi to complete the process of

20   reissuing checks to known Settlement Class Members.  For their part, plaintiffs' counsel will attempt to

21   locate the Doe plaintiffs for the purpose of distributing the incentive payments awarded by the Court.

22   Counsel anticipates that these efforts will be completed by December 31, 2007.

23   To ensure the completion of this process, and to provide the OB with the opportunity to dispose of

24   the funds as contemplated by the Settlement Agreement, or as required by this Court, plaintiffs' counsel

25   have no objection to extending the operations of the OB, as suggested in the May 23 Order.  A suitable date

26   for terminating the OB's operations should be determined by the Court, in consultation with the OB.  In

1    addition, plaintiffs' counsel believe that it would be appropriate for the OB to use the undistributed funds for

2    any of the purposes set forth in the May 23 Order. However, that decision is within the Court's and the

3    OB's discretion, under the terms of Paragraph 14 of the Settlement Agreement.

4    **IV.    REQUEST FOR REIMBURSEMENT OF GILARDI'S EXPENSES**

5         As plaintiffs' counsel informed the Court in our November 2006 report, the process of creating the

6    database and ensuring its accuracy and thoroughness was far more complex than counsel and Gilardi

7    contemplated, and has been beset by a number of unforeseen difficulties. This includes the herculean task of

8    compiling an accurate database of Settlement Class Members, notwithstanding incomplete, missing or

9    illegible names, addresses and employment information. Gilardi routinely supplemented and updated the

10   database with new or corrected information. It translated documents to determine whether they contained

11   important identifying information. It developed a software program to calculate payments under the

12   Settlement's complex formulas, and then performed audits to confirm that the calculations were correct.

13   Despite the many delays and problems encountered during this preparation phase, Gilardi successfully

14   mailed out almost 29,800 checks to individuals located in 17 countries.

15        Thereafter, Gilardi spent hundreds of hours handling inquiries and processing returned checks.

16   Gilardi responded to nearly 1,000 inquiries about the checks. When individuals questioned the amount they

17   received, Gilardi verified again its calculations, or re-issued checks if mistakes had been made. When

18   individuals expressed concern about a missing check, Gilardi obtained updated address information, verified

19   eligibility and, where appropriate, re-issued checks.

20        The Settlement negotiated by the parties and approved by the Court allocated only $500,000 for all

21   expenses related to providing notice to Settlement Class Members and administering the Settlement. That

22   sum already has been exceeded by over $300,000, and will grow larger as Gilardi finalizes the distribution

23   process. A statement of Gilardi's billings since May 31, 2005, which have not yet been paid and which

24   exceed the original Settlement allocation for administrative expenses, is attached hereto under Tab 3.

25        At the time the Settlement was negotiated, the parties in good faith believed that the amount

26   allocated to administrative expenses would be sufficient. With the benefit of hindsight, of course, and due to

circumstances beyond counsel's and Gilardi's control, that has proven not to be the case. Plaintiffs' counsel and Gilardi have committed extraordinary amounts of time and energy to ensure that payments reach as many Settlement Class Members as feasible, but the means to achieve that goal have been extremely expensive. The latest efforts (post-January 2007) have been undertaken with the knowledge and approval of the OB. There is no dispute that all these efforts were made in good faith, were performed as efficiently and diligently as possible, and were undertaken for the exclusive benefit of the Settlement Class Members.[3]

Nevertheless, it is now clear that 100% distribution of the Net Settlement Funds is neither practical nor feasible. Plaintiffs' counsel therefore request that the Court permit reimbursement of Gilardi's reasonable administrative expenses, over and above the original Settlement allocation, from undistributed funds. Counsel respectfully submit that this is an appropriate use of these funds. Every dollar of expense incurred by counsel has been dedicated to ensuring the greatest possible distribution to Settlement Class Members.

In light of the OB's discretion over undistributed funds pursuant to Paragraph 14 of the Settlement Agreement, plaintiffs' counsel began discussions with the OB last year about the possibility of paying for the ongoing expenditures incurred for the benefit of Settlement Class Members from the undistributable funds. At the OB's request, we are including with this report a summary of the work done and out-of-pocket expenses incurred by Gilardi to date. As can be seen from that summary, Gilardi's work has been completely consistent with its role as Claims Administrator and entirely in keeping with the interests of the Settlement Class Members, and has resulted in a real benefit for those Class Members who obtained a payment as a result of Gilardi's dedicated work on this project.

The total sum for which Gilardi properly should be reimbursed will be slightly more than the $310,308.94 discussed in Gilardi's letter attached under Tab 4. That is because Gilardi has some remaining tasks to complete to wind down its involvement in the administration of this Settlement. Plaintiffs' counsel therefore proposes that, if the Court approves the reimbursement of these expenses, Gilardi will deduct from

---

[3]    Plaintiffs' counsel emphasize that they are not seeking reimbursement for their own time or expenses which have been incurred in this effort – though that sum itself is considerable.

1  any remaining funds remitted to the OB, a sum not to exceed its total time and expenses incurred since

2  May 31, 2005.  That sum will be fully documented in an invoice submitted to the OB with the remittance.

3       For the foregoing reasons, plaintiffs' counsel respectfully request that the Court reimburse Gilardi,

4  out of the undistributed Settlement Funds, for its time and out-of-pocket expenses incurred since May 31,

5  2005 for the benefit of Settlement Class members and pursuant to its duties as Claims Administrator.

6  **V.    ANTICIPATED FURTHER PROCEEDINGS**

7       As indicated in the foregoing summaries, there still are some tasks to be completed in connection

8  with reissuing checks to certain individuals and locating Doe plaintiffs to make the Court-approved

9  incentive payments.  As noted, these tasks should be completed by the end of the year.  In addition, various

10  tax liabilities need to be resolved and a refund of taxes from the Commonwealth is still expected.  It is

11  unclear how long it will take for these tax matters to be fully resolved, although plaintiffs' counsel believe

12  that this process should be finalized by this time next year.  In order to remit **all** remaining undistributed

13  funds to the OB before year's end, it would be necessary to transfer not only the funds but also any tax

14  obligations to the OB.  Absent such a transfer, it would be premature to remit to the OB the entire balance of

15  the funds held by plaintiffs' counsel and Gilardi, and to discharge their obligations under the Settlement.

16  Accordingly, it would be appropriate for the Court to schedule another status conference during the final

17  quarter of this year, at which time the parties should have a better idea of when this mater may finally be

18  closed.

19  DATED:  June 8, 2007                 Respectfully submitted,

20                            **CIVILLE & TANG**
                          G. PATRICK CIVILLE

21                            JOYCE C.H. TANG

22

23                            By:              JOYCE C.H. TANG

24                            PMB 86, P.O. Box 10003

25                            Saipan, MP  96950-8903
                          Telephone: 670/235-1725

26

**LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
KEITH F. PARK
PAMELA M. PARKER
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058

**LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
ALBERT H. MEYERHOFF
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210
Telephone: 310/859-3100
310/278-2148 (fax)

**ALTSHULER BERZON LLP**
MICHAEL RUBIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151

*Attorneys for Plaintiffs*

S:\CasesSD\Marianas\MIS 00042628.doc

# TAB 1

**CIVILLE & TANG**
G. PATRICK CIVILLE
JOYCE C.H. TANG
PMB 86, P.O. Box 10003
Saipan, MP 96950-8903
Telephone: 670/235-1725

**LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP**
KEITH F. PARK
PAMELA M. PARKER
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
    – and –
ALBERT H. MEYERHOFF
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210
Telephone: 310/859-3100
310/278-2148 (fax)

**ALTSHULER, BERZON, NUSSBAUM,
  RUBIN & DEMAIN**
MICHAEL RUBIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DOES I, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>                   Plaintiffs,<br><br>   vs.<br><br>THE GAP, INC., et al.,<br><br>                   Defendants. | Case No. CV-01-0031<br><br>CLASS ACTION<br><br>SETTLEMENT FUND ACCOUNTING, PER COURT'S MAY 23, 2007 ORDER<br><br>DATE:   June 12, 2007<br>TIME:    9:00 a.m.<br>JUDGE:  Alex R. Munson |

1      In its Order of May 23, 2007 concerning the upcoming status conference, the Court stated that

2  plaintiffs' counsel should provide an accounting of the expenditures from the settlement funds as well as any

3  undistributed funds currently being held in escrow.  Attached hereto as Exhibit A is an accounting of the

4  settlement fund.  Attached hereto as Exhibit B are the most recent bank account statement and T-bill

5  purchase confirmation for these funds.

6  DATED:  June 8, 2007                              Respectfully submitted,

7                                                    **CIVILLE & TANG**
                                                     G. PATRICK CIVILLE
8                                                    JOYCE C.H. TANG

9
                                                     By: _____
10                                                          JOYCE C.H. TANG

11                                                   PMB 86, P.O. Box 10003
                                                     Saipan, MP  96950-8903
12                                                   Telephone:  670/235-1725

13                                                   **LERACH COUGHLIN STOIA GELLER**
                                                     **  RUDMAN & ROBBINS LLP**
14                                                   KEITH F. PARK
                                                     PAMELA M. PARKER
15                                                   655 West Broadway, Suite 1900
                                                     San Diego, CA  92101
16                                                   Telephone:  619/231-1058

17                                                   **LERACH COUGHLIN STOIA GELLER**
                                                     **  RUDMAN & ROBBINS LLP**
18                                                   ALBERT H. MEYERHOFF
                                                     9601 Wilshire Blvd., Suite 510
19                                                   Los Angeles, CA  90210
                                                     Telephone:  310/859-3100
20                                                   310/278-2148 (fax)

21                                                   **ALTSHULER, BERZON, NUSSBAUM,**
                                                     **  RUBIN & DEMAIN**
22                                                   MICHAEL RUBIN
                                                     177 Post Street, Suite 300
23                                                   San Francisco, CA  94108
                                                     Telephone:  415/421-7151
24
                                                     *Attorneys for Plaintiffs*
25

26  S:\Settlement\Marianas Supplemental\FUND ACCOUNTING 00042405.doc

# EXHIBIT A

## MARIANAS SETTLEMENT FUND

| | | |
|---|---|---|
| Deposits (including accrued interest) | | $19,126,825.56 |
| | | |
| Interest Earned | | |
| T-Bill | $734,158.22 | |
| Cash Interest | $16,924.54 | $751,082.76 |
| | | |
| **TOTAL** | | **$19,877,908.32** |
| | | |
| LESS | | |
| Fees & Expenses Awarded | | $7,837,651.97 |
| Expenses Disallowed & Paid Into Court | | $912,348.03 |
| Most Favored Nations Refund | | $41,045.00 |
| Taxes & Tax Prep | | $18,866.73 |
| Administrative Costs (Notice & Claims) | | $541,132.84 |
| Additional Translation Costs | | $40,377.05 |
| Bank Charges | | $235.00 |
| | | |
| **TOTAL** | | **$9,391,656.62** |
| | | |
| Cy Pres Payment | | $515,117.00 |
| Oversight Board/Repatriation | | $3,823,767.00 |
| Transfer to Gilardi for Distribution to Class | | $5,806,719.35 |
| | | |
| **TOTAL** | | **$10,145,603.35** |
| | | |
| **TOTAL DEDUCTIONS** | | **$19,537,259.97** |
| | | |
| **NET BALANCE/RESERVE FOR TAXES** | | **$340,648.35 *** |

\* Does not include $44,000 held in a separate account and which
represents the balance of court-ordered incentive awards
to be paid to the named plaintiffs

# EXHIBIT B

1420 Kettner Boulevard
P.O. Box 12605
San Diego, CA 92101
(619) 231-4989

# San Diego National Bank

## SECURITY TRANSACTION VOUCHER

Purchased for Customer

**Marianas**
Milberg Weiss Bershad Hynes & Lerach
655 West Braodway, Suite 1900
San Diego, CA 92101-3301

**Settlement Date:** 02/08/2007
**Trade Date:** 02/07/2007

**Broker:** Stone & Youngberg, LLC

**Security:** US TREASURY Bill
**Cusip:** 912795ZF1

| Quantity | Discount | Yield | Maturity | Price | Fee |
|----------|----------|-------|----------|-------|-----|
| $ 185,000.00 | 5.000% | 5.134% | 05/10/2007 | $ 98.7361111 | $ 35.00 |

**Delivery:** 02406586-70
**Remarks:**

| | |
|---|---|
| **Payment:** | $182,661.81 |
| **Discount:** | $2,338.19 |

**Number of Days:** 91

Security Teller _____

Approved _____

Approved _____

ALL SECURITIES ARE HELD IN SAFEKEEPING AT FRB.
Security described above is not an obligation of SDNB and is not insured by the FDIC.


**San Diego National Bank**
www.sdnb.com

**Statement of Account**

Last statement: **March 31, 2007**
This statement: **April 30, 2007**
Total days in statement period: **30**

**Page 1 of 2**

Direct inquiries to:
619-231-4989

San Diego National Bank
1420 Kettner Blvd Suite 101
San Diego, CA 92101

MARIANA'S
MILBERG WEISS BERSHAD HYNES & LERACH LLP
SETTLEMENT FUND ACCOUNT
655 W BROADWAY SUITE 1900
SAN DIEGO CA 92101-8498

0

## Summary of Account Balance

| Account | Number | Ending Balance |
|---------|--------|----------------|
| San Diego Plus | 0240658670 | $155,367.30 |

BEGINNING 6/1/07 SDNB WILL NO LONGER SEND NOTIFICATIONS OF SWEEP TRANSACTIONS. THIS INFORMATION IS AVAILABLE THROUGH OUR ONLINE BANKING SERVICE, AND ON YOUR MONTHLY STATEMENTS. CONTACT YOUR LOCAL BRANCH FOR MORE INFORMATION.

### San Diego Plus

Account number

| | | |
|---|---|---|
| Beginning balance | $155,071.60 | |
| Low balance | $155,071.60 | |
| Average balance | $155,071.60 | |
| Interest paid year to date | $763.50 | |
| Total additions | $295.70 | Total subtractions | $0.00 |

| Date | Description | Additions | Subtractions |
|------|-------------|-----------|--------------|
| 04-30 | #Interest | 295.70 | |

**Daily balances**

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|------|--------|
| 03-31 | 155,071.60 | 04-30 | 155,367.30 | | | | |

24 Hour Bank by Phone 1-888-724-SDNB (7362)

**MEMBER FDIC**

**TAB 2**

### Saipan Garment Workers Settlement
### Post Distribution Check Report
### As of June 1, 2007

| | |
|---|---:|
| Amount for distribution | $5,706,719.35 |
| Tax Penalty Reserve | $98,331.52 |
| Employee Tax paid | $398,530.83 |
| Gross Amount for distribution | **$5,209,857.00** |

| | |
|---|---:|
| Gross Amount for distribution | $5,209,857.00 |
| FICA Tax Paid | $398,528.64 |
| Marianas Tax Paid | $833,653.65 |
| Net Amount for distribution | **$3,977,674.71** |

| | Number of Checks | Amount *net |
|---|---:|---:|
| Total Checks issued on 9/26/2006 | 29,771 | $3,977,674.68 |
| Total Cashed | 13,725 | $2,282,835.89 |
| Total Outstanding | 16,046 | $1,694,838.79 |
| Checks Outstanding but Reissued or in the process of being reissued | 423 | $65,198.24 |
| Dollars Accounted For | | $2,348,034.13 |
| Dollars Not Accounted For | | $1,629,640.55 |

# TAB 3

CONFIDENTIAL

## Funds Analysis
for the purpose of current status
As of June 6, 2007

**Mariana Settlement**

**Source of Funds**

| | | |
|---|---:|---:|
| Escrow account funding received September 2006 | | $5,806,719.35 |
| Interest earned through May 31, 2007 | | 79,321.67 |
| Total Source of Funds | | 5,886,041.02 |

**Use of Funds**

| | | | |
|---|---:|---:|---:|
| Net Settlement Checks Issued 9/28/06 | ($3,977,674.68) | | |
| Add'l check issued (corrections, replacements) | (1,576.63) | | |
| Amounts deducted from reissues for special handling | 30.00 | | |
| Stale dated checks void issues sent | 1,662,182.99 | | |
| Stop/void checks not reissued | 3,443.80 | | |
| Outstanding reissued checks not void | 28,544.10 | | |
| Settlement Checks paid to date | | ($2,285,050.42) | |
| US Fed FICA tax liability deposited | (797,108.11) | | |
| Deposited tax refunded due to uncashed/unreported checks | 335,527.77 | | |
| Net US tax liablity paid | | (461,580.34) | |
| Mariana "employee" tax liability deposited | (833,653.65) | | |
| Deposited tax refunded due to uncashed/unreported checks | 0.00 | | |
| Net Mariana tax liability paid (note 1) | | (833,653.65) | |
| Stopped checks paid by bank to be reversed | | (317.27) | |
| Tax Compliance fees paid to date | | (9,763.75) | |
| Total Use of Funds | | | (3,590,365.43) |
| **NET FUND BALANCE at June 6, 2007** | | | **$2,295,675.59** |

**Analysis of NET FUND BALANCE**

| | | |
|---|---:|---:|
| Uncashed Checks | | $1,694,170.89 |
| US Fed FICA tax returned for uncashed checks | | 335,527.77 |
| Reserve for corrected claims | $100,000.00 | |
| Less corrected/replaced checks | (1,576.63) | |
| Remaining Reserve for corrected claims | | 98,423.37 |
| Reserve for tax penalties | 100,000.00 | |
| Less rounding difference from calculation | (1,668.48) | |
| Remaining Reserve for tax penalties | | 98,331.52 |
| Interest earned | | 79,321.67 |
| Tax compliance fees paid to date | | (9,763.75) |
| Stopped checks paid by bank to be reversed | | (317.27) |
| Difference US Fed FICA between calculated and actual | | (48.61) |
| Amounts deducted from reissues for special handling | | 30.00 |
| **NET FUND BALANCE at June 6, 2007** | | **$2,295,675.59** |

Note 1   A claim for a refund of Commonwealth of Mariana Islands tax in the
amount of $350,639.40 was filed March 26, 2007. Status being determined.

Prepared by Gilardi Co. LLC
6/7/2007

# TAB 4



**Gilardi &Co LLC**

3301 Kerner Blvd.
San Rafael, CA 94901
P: (415) 461-0410
F: (415) 461-0412

Pamela Parker, Esq.
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

June 5, 2007

Re: Saipan Garment Workers Settlement.

Dear Pamela,

At your request, I am sending this summary of our billing information.

On June 13, 2006, Gilardi & Co. submitted an invoice to the Lerach Coughlin firm which covered the period May 13, 2005 through June 5, 2006. The total amount of this invoice was $270,520, which covered both Gilardi's time and out-of-pocket expenses. That sum also included an estimate to complete administration in the amount of $146,725. However, that amount subsequently was "backed out" because a separate invoice is being prepared for the actual work performed during the time period from June 6, 2006 through the present. Therefore, the actual costs incurred between May 13, 2005 and June 5, 2006 were $123,795.

Since June 6, 2006 we have incurred total time and expense costs of $186,513.94. Gilardi's total billings from May 13, 2005 to the present therefore amount to $310,308.94. This includes a total of 3,055.5 hours of Gilardi personnel time.

The work that has been performed and/or out of pocket expenses that have been paid since May 13, 2005 include:

- completion of the set up of the database to use for processing;
- the complete processing of the filed FLSA consent forms;
- translation of the FLSA consent forms not already translated into English;
- processing numerous address updates as they were received from class members or plaintiffs' counsel;
- substantial review of individual claimant information (including looking for incomplete addresses and excluding duplicates);
- calculations of class member payments;
- tax preparation (withholding, filing, tax documents, and costs of Damasco & Associates which is a firm we consult with for tax compliance on wage matters );
- performing reviews/audits of distribution checks to make sure the calculations were correct;
- printing & mailing of checks,
- claimant correspondence, pertaining to, for example, questions about the amounts of the checks, failure to receive checks or lack of a proper address;
- preparing reports or responses to requests by counsel or the court regarding the status of settlement distribution.

Kind regards,

*Ry Fitzgerald*

Ryanne Cozzi Fitzgerald
Gilardi & Co. LLC