TIMOTHY H. BELLAS
Garment Oversight Board
P.O. Box 505943
Saipan, MP 96950

Tel. 322-9890; Fax 322-9891

*Pro Se* Interested Party

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DOE I, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>THE GAP, INC., et al.,<br><br>      Defendants. | Case No. CV-01-0031<br><br>CLASS ACTION |
| DOE I, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>BRYLANE, L.P., et al.,<br><br>      Defendants. | GARMENT OVERSIGHT BOARD **SUMMARY ACCOUNTING AND PLAN FOR DISTRIBUTION OF RESIDUAL FUNDS** |
| DOE I, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>  vs. | |

1

|  |  |
|---|---|
| THE DRESS BARN, INC. ) | Date: January 10th, 2008 |
| ) Defendants. ) | Time: 9:30 |
| ) | Judge: Munson |

THE DRESS BARN, INC.                    )
                                         )    Date: January 10th, 2008
                    Defendants.          )    Time: 9:30
                                         )    Judge: Munson

COMES NOW, the undersigned, as the Chairman of the Garment Oversight Board (GOB), pursuant to Paragraph 6 the Court's previous Order entered on July 13th, 2007, wherein the GOB was required to submit, within One Hundred Twenty (120) days of receipt of the residual settlement funds (RSF) from Plaintiffs' counsel, a plan for the approval of this Court as to how those funds would be distributed, and submits the below described proposed Plan of Distribution (Plan), and Summary Accounting of the Funds in its possession and control.

A.   Facts and Factual Assumptions on Which the Plan is Based.

Initially, the GOB would like to confirm and state certain facts and factual assertions under which this Plan is proposed to the Court:

1.   The RSF was not deposited into the GOB's trust account until August 16, 2007;

2.   Therefore, under the Court's previously imposed deadline, the GOB is required to file its proposed Plan by December 14, 2007.

3.   In the interim, the GOB has been attempting to verify the identity and location of certain settlement class members (SCM) who were supposed to be reissued their checks by the GOB after it assumed that responsibility from the Claims Administrator (CA), Gilardi & Co.

4. The completion of this process is related to the preparation of this Plan as it determines the total amount of funds that remain to be distributed.

5. At the time or prior to the filing of this proposed Plan, all of the checks that were designated as "re-issues" are being or were mailed to the persons who have already verified their identity and location/address to the GOB.

6. Therefore, subtracting the amount of these checks, the GOB will have approximately, $2,250,000[1] with which to make a second supplemental distribution (SSD) as provided under the Settlement Agreement (SA) in this case.

7. In addition, the GOB has conducted a newspaper published campaign to solicit the identity of any workers that were qualified to be SCMs but have not previously received any payment. As a result of this effort, 332 SCMs have been identified, most of whom are still located in Saipan. These are garment workers who qualify as SCMs based on the time period that they worked in the garment industry but never identified or previously included in the list of Plaintiffs. Therefore, the Plan proposes to make an initial payment to these workers which will be deducted from the RSF, prior to making the SSD.

8. Under the prior distribution made by the CA, the maximum net amount that any SCM received was $799.50[2]. The minimum was approximately $72.27[3]. The great

---

[1] This amount is $42,000 less than the amount reflected in the Accounting because the GOB is estimating that this amount will be necessary for preparation and mailing of the 14,000 checks of the SSD.

[2] There is one check in the amount $921.77, however it is made out to Payless Market and it is unclear whether this is for a worker claim or some other purpose. Therefore, the GOB is using $799 as the predominant maximum amount paid to SCMs to base its distribution calculations.

[3] There are also checks less than $72.27 paid to some workers which are in the area of $26 but the vast majority are $72 and the GOB is using that figure for purposes of its calculations.

3

disparity in the amounts paid to the various workers is based on the complex system of classification contained in the SA provisions and relates to what period in time and for how many years SCMs worked in the CNMI garment industry and whether they were FLSA opt in plaintiffs.

9. The CA has previously indicated to this Court (incorporated into the Court's July 13th Order at ¶ 5) that the "proprietary software" the CA developed was complicated and not transferable to the GOB.

10. Since there is no mandatory language in the SA as to the distribution of the SSD and since it is committed to the discretion of the GOB, the instant Plan proposes that the SSD be a payment of equal amount to all SCMs. Thus, the amount of the payment would be the amount of the RSF[4] divided by the number of verified SCMs.

11. Experience from prior distributions indicates that it is unlikely, due to various factors, that all of the checks to be mailed as part of the SSD will be cashed within a finite period.

12. The SA contains language in Paragraph 10 g. which indicates that a certain portion of the Combined Cash Settlement Amount was to be set aside for *cy pres* payments. Therefore, the GOB which is given "discretion" in the distribution of Settlement Funds (See SA Paragraph 14) perceives as the ultimate goal of the SA, to assist all CNMI garment workers and to minimize the cost of further administrative expenses. To implement this goal the GOB proposes a Garment Worker Trust Fund as more substantively defined in Exhibit A

---

[4] The RSF would be the remainder after all re issue checks are deducted and all the new first time payments are made to the SCMs who were not included in the first distribution.

to this Plan.

13. In order to give a frame of reference to the figures utilized in the proposed Plan, the GOB has attached hereto as Exhibit B, a Summary Accounting of Funds On Hand.

14. Based on the publications in local CNMI newspapers asking qualified SCMs to contact the GOB, it has now received and verified documentation which establishes that of the **1,800** garment workers who have recently contacted the GOB:

   a. **1,077** of the 1,800 have already received an initial payment and they are simply entitled to whatever SSD is mailed to all the SCMs. (This determination is based on the records of the CA transferred to the GOB.)

   b. **88** of the 1,800 are also on the list of 356 SCMs previously identified by the CA as the persons who should have their checks re-issued and are located within and outside of the CNMI and have now been reissued their checks.

   c. **61** of the 1,800 workers have submitted inconclusive documentation to establish that they are entitled to be classified as SCMs.

   d. **242** of the 1,800 have been verified as SCMs who are located within and outside of the CNMI and were previously issued checks but did not receive them because CA's listing indicates that their addresses were "bad" and the GOB now has currently accurate addresses for these SCMs.

   e. **332** of the 1,800 have been verified as qualified to be SCMs who are located within and outside of the CNMI but who were not on the CA's listing and have never received any prior payment.

5

15. According to the figures provided by the CA:

   a. it initially sent out checks payable to 29,771 SCMs in the first distribution.

   b. The CA withheld and paid all applicable taxes to US & CNMI Governments for all checks issued.

   c. Of the total checks issued only 13,880 or less than 50% were actually received and cashed by the SCMs.

   d. To the knowledge of the GOB, CA has received a partial refund of taxes previously paid to the US Government from the returned checks in the first distribution.

   e. Therefore, FICA tax shall have to be withheld and paid for the initial payments to the 332 SCMs[5] specified above in subparagraph 14 e.

   f. As for CNMI taxes there has been no refund on the amounts already paid on all of the payments distributed by the CA.

   g. Therefore, all payments to be made from the SSD have been previously taxed and no withholding will be made again for taxes due to the CNMI.

   h. Furthermore, with the exception of the 332 SCMs identified in subparagraph A. 14 e., the GOB Plan proposes to make one equal supplemental payment to all of the SCMs which is not based on the payment of unpaid wage claims.

6

B. <u>Phase One of the Plan.</u>

1. The total amount available for distribution would be ---------$2,250,000.00

2. GOB proposes to make an initial distribution to the 332 SCMs specified under subparagraph A. 14 e., above in the amount of $192,385.97 which is based on an individual payment of 60% of the $799.50 payment previously made to other SCMs by the CA in the first distribution[6] ------------------------------ ($192,385.97)

    Since these are initial payments for wage claims the GOB will Withhold and pay FICA taxes of -------------------------------- ($8,510.90)

                            Leaving A Remaining Balance of------------- $2,049,103.13

3. The Remaining Balance would be distributed to all persons who have received an initial payment.

    a. Total persons entitled to a SSD would therefore be subparagraph A.14 e. + A. 15 c. (332 + 13,880 = 14,212)

    b. Dividing the Remaining Balance by 14,212 means that each SCM will receive a SSD check in the amount of ------- **$144.18**

C. <u>Phase Two of the Plan.</u>

As previously stated in A. 11., above it is highly likely, for various reasons and allowing for a reasonable time period for all mailed checks to be cashed, that a certain

---

[5] Provided that, SCMs who are Filipino citizens are no subject to FICA deductions.
[6] Based on the documentation provided to the GOB, over 90% of these workers qualify, based on the periods that they worked in the Saipan industry, for almost all of the categories listed in the pay out provisions of the SA. The FLSA opt in category consists of voluminous records which based on

7

percentage of the SSD checks will not be cashed and revert to the account of the GOB.

Therefore, the GOB proposes the establishment of a Garment Workers Trust Fund (GWTF) to be administered for a period of two years after expiration of the GOB for the benefit of repatriating and otherwise assisting garment workers who encounter difficulties from the winding down and ultimate closure of the CNMI garment industry.

The terms, purposes and administration of the GWTF are as stated in the attached Exhibit A.

D.   Phase Three of the Plan.

Upon the expiration of the two year term of the GWTF, as provided in Exhibit A, the trustees would solicit proposals from non profit charitable organizations in the CNMI and make donations to one or more of such organizations until the GWTF is expended.

E.   Final Phase of the Plan.

The GOB and trustees of the GWTF will provide an accounting of the distribution of all funds distributed under the Plan and the GWTF to the Court and any other interested party who requests it, at the time that the TF funds are completely expended and the trustees seek an Order of the Court discharging them from their responsibilities as GWTF trustees. Dated this 14th day of December, 2007.

_____
Timothy H. Bellas, Chairman

---

the number of workers involved would make the search of those records an ineffective expenditure of the SRF and unduly prolong the final distribution.

8